John L. PARKS, d/b/a American Box & Paper Company, Appellant,

v.

ATLANTA PRINTING PRESSMEN & ASSISTANT'S UNION NO. 8, INTERNATIONAL PRINTING PRESSMEN & ASSISTANT'S UNION OF NORTH AMERICA, A.F.L., Appellee.

No. 16257.

United States Court of Appeals Fifth Circuit.

Oct. 9, 1957.

Hoke Smith and George B. Haley, Jr., Atlanta, Ga., for appellant.

Robert L. Mitchell, Atlanta, Ga., John S. McLellan, Kingsport, Tenn., for appellee.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

PER CURIAM.

After twice losing, the third time prevailing below, and losing here by reversal and rendition with a remand for a trial on damages, Parks v. Atlanta Printing Pressmen and Assistant's Union, 5 Cir., 243 F.2d 284, followed by denial of certiorari 354 U.S. 937, 77 S.Ct. 1397, 1 L.Ed.2d 1537, defendant AFL Union, by motion to amend our judgment, seeks a fifth bite at the cherry to require a trial on liability issues as well. Formal denials in the pleadings, insufficient alone to create a genuine issue of fact where none exists, Bruce Construction Corp. v. United States for use of Westinghouse Electric Supply Company, 5 Cir., 242 F.2d 873, do controvert the plaintiff's assertion that (1) the CIO Union was

certified, (2) the AFL Union "called" the strike, and that (3) the plaintiff's business was "an industry or activity affecting commerce," 29 U.S.C.A. § 187. But a consideration of the whole record here, below, and above is convincing that this aftermath is an afterthought as well.

First, in twice moving below for a reconsideration of the earlier order granting summary judgment for the plaintiff Employer and limiting trial solely to the issue of damages, defendant AFL Union's motions related entirely to the basic question with which our decision treated and did not, in the least, suggest the existence of a controversy on these three points. Next, the stipulations stated without dispute that the CIO Union was certified and there is and can be no real doubt as to the time, form and content of this official governmental action. On issue (2) the Statute, 29 U.S.C.A. § 187(a) (3), requires only that the Union "engage in * * * a strike * * * where an object * * *" is an illegal one. By

admitted correspondence,[1] pleadings,[2] stipulation,[3] and repeated statements by responsible Counsel in briefs,[4] there is no doubt that the AFL Union "engaged" in the strike and avowedly for the purpose which we held to be illegal.

On issue (3) the stipulated[5] facts show that the Employer's business was "* * * an industry or activity affecting commerce * * *," thus meeting the requirement of the statute, 29 U.S.C.A. § 187(a) (3), N. L. R. B. v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014, whatever might have been, as now belatedly claimed, the administrative refusal of the Board to accept jurisdiction. Cf. Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601; Amalgamated Meat Cutters, etc., Local No. 427, A. F. L. v. Fairlawn Meats, Inc., 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613; San Diego Building Trades Council v. Garmon, 353 U.S. 26, 77 S.Ct. 607, 1 L.Ed.2d 618.

Motion denied.

1. See letter April 27, 1955 by the AFL Union's counsel to NLRB withdrawing its petition for certification:
   "* * * Since the employees concerned are already out on strike, my client will either win or lose the strike on an economic basis. Further proceedings therefore would be unwarranted before your agency."

2. The AFL Union's initial motion to dismiss sought dismissal "because the strike engaged in by defendant [AFL Union] and upon which this cause of action is predicated * * * did * * * not * * * violate Section 303(a) (3) * * *."
   And see also first Motion for Reconsideration in trial court (R.33): "There can be no question but the facts stipulated by the parties show * * * that movant [AFL Union] was free to strike * * *. * * * The unit sought by movant [AFL Union] is a unit of 'all apprentices * * *.'"

3. See par. 9: "The unit *sought* by defendant Union [AFL], includes all the job classifications contained in the certification of the unit of August 1953."
   Par. 10: "There were approximately 27 employees working in the unit presently *sought* by defendant [AFL Union]." (Emphasis supplied.)

4. See AFL Union's brief this Court: "The recognition strike which resulted in the instant suit had as its objective, recognition of Appellee [AFL Union] by Appellant [plaintiff] in the more comprehensive bargaining unit."
   "In the case at bar the dispute was between the Appellant [AFL Union] and the Appellee [plaintiff], resulting from Appellee's [AFL Union] request for and Appellant's refusal of recognition of Appellee [AFL Union] as the duly designated representative of a majority of Appellant's printing employees * * *."
   The Employer informs us that the AFL Union's petition for certiorari stated categorically: "* * * In February, 1955, petitioner [AFL Union] sought recognition from Respondent [plaintiff] in a unit composed of all Respondent's printing employees (including those in the lithographic department) numbering in all 27 * * * and struck for such recognition on April 13, 1955 * * *."

5. Par. 14: "Plaintiff company, during the last twelve months, sold goods valued at $12,484.84 to customers outside the State of Georgia, and approximately $201,469.65 worth of sales or services were performed for customers who sold or performed services in excess of $50,000 for out of state customers."