Stork Restaurant, Inc., Respondent, *v.* Louis Fernandez, as President of Chefs, Cooks, Pastry Cooks and Assistants, Local 89, Hotel and Restaurant Employees Union, AFL–CIO, et al., Appellants.

First Department, May 4, 1959.

*Jerome B. Lurie* of counsel (*Sidney E. Cohn, Benjamin D. Stein* and *Sol Bogen* with him on the brief; *Boudin, Cohn & Glickstein*, attorneys; *Pinto & Stein*, attorneys), for appellants.

*Maurice N. Nessen* of counsel (*Franken, Kramer, Bam & Nessen*, attorneys), for respondent.

STEVENS, J. This is an appeal from an order dated and entered April 1, 1959, which granted plaintiff's motion for a temporary injunction and denied defendants' cross motion to dismiss the complaint pursuant to subdivisions 1 and 3 of rule 107 of the Rules of Civil Practice, on the ground (1) that the court had no jurisdiction of the subject of the action, and (2) that there is another action pending between the same parties for the same cause.

The complaint and supporting affidavits allege that the picketing which was commenced by the two unions on January 8 and 9, 1957, respectively, is not for any lawful labor objective but is for recognitional purposes and to compel plaintiff to do an unlawful act. Plaintiff asserts also that the charges before the State Labor Board were dismissed because its business affects interstate commerce, and that it will suffer irreparable harm unless the unions be enjoined.

While no answer has been served or filed, the affidavits in opposition to the motion and in support of the cross motion contain allegations that certain employees of the plaintiff, members of the defendant unions, were wrongfully discharged for union activities, and assert that the unions are striking and picketing for the purpose of reinstating such employees and to protest certain unfair labor practices, which are enumerated, and to improve wages, hours and working conditions.

Parenthetically, it might be noted that both the State and Federal Governments recognize the right of employees to strike or engage in lawful concerted activities. (State Labor Relations Act, § 713, Labor Law, art. 20; Labor Management Relations Act of 1947, § 13, U. S. Code, tit. 29, §163.)

Without indulging in a lengthy recital of the facts or extensive consideration of the merits, it appears that subsequent to the initiation of the picketing the defendant unions filed charges of unfair labor practices against the plaintiff with the State Labor Relations Board. Several hearings were held. On or about January 28, 1959, the board, without passing on the merits of the case, ruled that it had no jurisdiction because the plaintiff is engaged in interstate commerce.

In light of that ruling, because of the lapse of time, defendant unions were barred from asserting their claim on the original charges before the National Labor Relations Board. The Labor Management Relations Act of 1947 provides: '' That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made  *  *  * '' (§ 10, subd.

[b], U. S. Code, tit. 29, § 160, subd. [b]). It is in this posture of the matter that the present action seeking a temporary and permanent injunction was brought.

Special Term (16 Misc 2d 265, 270) in an opinion granting the motion for a temporary injunction and directing the posting of a bond, asserted there was some doubt that plaintiff's complaint " alleges an unfair labor practice under section 8 (subd. [b], pars. [1], [2]) of the act (U. S. Code, tit. 29, § 158, subd. [b], pars. [1], [2]) " and resolved such doubt by declaring a retention of jurisdiction in our courts, citing *Pleasant Valley Packing Co.* v. *Talarico* (5 N Y 2d 40). Special Term held also that there was at present no " actual labor dispute within the intendment of section 876-a of the Civil Practice Act." (p. 271.)

This case can be distinguished from the *Pleasant Valley* case (*supra*) because in that case the defendant union by its picketing and demands sought to have the plaintiff recognize it, instead of the union to which plaintiff's employees belonged and which had already been certified by the National Labor Relations Board, as the exclusive bargaining agent of plaintiff's employees. Thus the picketing there was not organizational but clearly recognitional and in contradiction to the certification.

In the instant case the announced objectives are the improvement or raising of standards of wages, hours and working conditions, to protest discriminatory discharges, and for organizational purposes — all recognized as legal labor objectives. (*Woods* v. *O'Grady,* 307 N. Y. 532.) No hearing has been held within the meaning of section 876-a of the Civil Practice Act, nor has any determination to the contrary been made.

Moreover this court has recognized the right of defendant unions to picket, holding that the unions had shown " prima facie that they are authorized to represent a majority of plaintiff's employees." (*Stork Restaurant* v. *Fernandez,* 3 A D 2d 233, 236.) A strike legal in its inception does not *ipso facto* become illegal merely by the passage of time. Where it is established prima facie that a majority of the employees are members of a picketing union at the time such picketing begins, discharge of such employees because of union membership or for other alleged unfair practices by the employer will not alone suffice to change the nature of the picketing.

Whether or not the claims of defendants be characterized as " stale " so as to preclude acceptance by the National Labor Relations Board, the basic question which remains is if this dispute falls within an area which has been pre-empted by Federal law so as to oust the State courts of jurisdiction.

It has been held that the National Labor Relations Board may not refuse to exercise jurisdiction over the hotel industry as a class. (*Hotel Employees* v. *Leedom*, 358 U. S. 99 [1958].) It has accepted jurisdiction over restaurants (*Matter of Gene Compton's Corp.*, 116 N. L. R. B. 1944 [1956]), and "The Board has decided that it will assert jurisdiction over all retail enterprises which fall within its statutory jurisdiction and *which do a gross volume of business of at least $500,000 per annum.* The Board will apply this standard to the total operations of an enterprise whether it consists of one or more establishments or locations, and whether it operates in one or more States." (*Carolina Supplies & Cement Co.*, 43 L R R M 1060, 122 N. L. R. B. 17 [1958].)

The State Labor Relations Board, as one of its conclusions of law, found "Respondent's business operations meet the jurisdictional standards of the National Labor Relations Board," and the conclusion so found is not disputed by either party here. Clearly then, plaintiff-respondent's activities fall within the ambit of Federal statute, and within the area intended by Congress to be subject to the jurisdiction of the National Labor Relations Board.

Congress, by vesting in the National Labor Relations Board jurisdiction over labor relation matters affecting interstate commerce, has completely displaced State power to deal with such matters and this is true even though the board declines or would decline to exercise its jurisdiction (*Guss* v. *Utah Labor Bd.*, 353 U. S. 1 [1957]), unless, by agreement, it has ceded jurisdiction over certain cases subject to the limitations contained in section 10 of the Federal statute. This applies whether it be a State board or a State court seeking to operate within the area proscribed for the States. (*Guss* v. *Utah Labor Bd.*, *ante*; *Meat Cutters* v. *Fairlawn Meats*, 353 U. S. 20; *San Diego Unions* v. *Garmon*, 353 U. S. 26.) Most recently the prohibition on State action in the pre-empted area of interstate commerce has been extended to restraining a State court from awarding damages against peaceful picketing as an activity protected or prohibited by Federal law. (*San Diego Unions* v. *Garmon*, 359 U. S. 236 [April 20, 1959].) The court considered the award and the obligation to pay damages as "a potent method of governing conduct and controlling policy" (p. 247). Because of the difficulty heretofore encountered in ascertaining or defining the areas left for State action, attention is directed to portions of the opinion which in our view shed light on the problem.

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7

of the National Labor Relations Act [which deals with the rights of employees to self-organization, bargain collectively through representatives of their own choosing, to engage in other concerted activities for the purpose of collective bargaining, etc.], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes '' (p. 244).

The court pointed out that it is not clear at times whether the '' activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. * * * It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board. * * * When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted '' (pp. 244–245).

There have been occasions where the United States Supreme Court has upheld or approved State action. Such instances fall into fairly well-defined categories and encompass areas where State court action deals '' with arbitrariness and misconduct vis-à-vis the individual union members and the union '' and those State court decisions which '' do not present potentialities of conflicts in kind or degree which require a hands-off directive to the states ''. (Machinists v. Gonzales, 356 U. S. 617, 622 [breach of a labor contract through wrongful expulsion].) Where the activity complained of has been marked by actual or threatened violence to persons or destruction of property State action has been upheld. (Automobile Workers v. Russell, 356 U. S. 634 [suit by union member against union for the tort of wrongful interference with a lawful occupation by threats, etc.]; United Workers v. Laburnum Corp., 347 U. S. 656 [a common-law tort action between a union and an employer for

damages based upon tortious conduct which also constituted an unfair labor practice].) "State jurisdiction has prevailed in these situations because the compelling state interest * * * in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction." (*San Diego Unions* v. *Garmon,* 359 U. S. 236, 247, *supra.*) The case before us does not fall within that protective range.

In view of the foregoing it is clear that the court was without power to grant a temporary injunction.

The contention of the defendants-appellants that there is another action pending between the same parties for the same cause is, as the court found, without merit. The complaints are different. The prior amended complaint was based on the fact that a certification was pending before the State Labor Relations Board, and it was upon that complaint and defendants' affidavits that this court passed (*Stork Restaurant* v. *Fernandez,* 3 A D 2d 233). The present complaint is based upon the fact that the charges have been dismissed by the State board and the picketing continued in spite of such ruling.

The order appealed from should be modified, on the law and on the facts, so as to strike the first and second ordering paragraphs and to deny the motion for a temporary injunction, and as so modified be otherwise affirmed, with costs to the appellants.

Breitel, J. P., Rabin, M. M. Frank and Valente, JJ., concur.

Order unanimously modified, on the law and on the facts, so as to strike the first and second ordering paragraphs thereof and to deny the plaintiff's motion for a temporary injunction, with $10 costs, and, as so modified, the said order is affirmed, with $20 costs and disbursements to the appellants.