JACOB CLYMER WAGNER, Plaintiff, v. JOHN J. HARTNETT and LOCAL UNION No. 626 of Wilmington, Delaware, and Vicinity, and part of the United Brotherhood of Carpenters and Joiners of America, an unincorporated association, and all of its members, Defendants.

(*July* 16, 1959.)

CHRISTIE, J., sitting.

*Donald W. Booker* for Plaintiff.

*Joseph Donald Craven* for Defendants.

Superior Court for New Castle County, No. 609, C. A., 1957.

CHRISTIE, J.:

This case was filed June 14, 1957. The Complaint alleges in substance that plaintiff was denied membership in the defendant union on August 17, 1955, and that the next day he was discharged by a construction firm which had a union shop agreement with defendant union. It is further alleged that defendant union wrongfully refused membership to plaintiff, that such union caused dismissal of plaintiff and that it caused plaintiff's discharge from other employment obtained by him. Money damages are demanded.

Defendants moved to dismiss the complaint for failure to state a claim and for lack of jurisdiction.

Attached to that motion was a copy of a letter from the National Labor Relations Board, Office of the General Counsel, in which it was indicated that plaintiff had laid this complaint before the Regional Director of the N. L. R. B. and that the Regional Director had concluded that there was insufficient evidence of violations to warrant further proceedings. The General Counsel, to whom plaintiff had appealed, considered the appeal and sustained the ruling of the Regional Director.

This Court denied the motion to dismiss by memorandum dated December 18, 1957, concluding that the complaint stated a claim in common law tort and that this Court had jurisdiction of the subject matter "even though the conduct complained of

constitutes an unfair practice under the Labor Management Relations Act of 1947 [29 *U. S. C. A.* § 141 *et seq.*]."

Depositions were then taken and affidavits were filed. Based on these, defendants have now moved for summary judgment.

An affidavit of plaintiff, filed in connection with defendants' motion for summary judgment and dated February 6, 1959, contains certain matters of legal argument. Among the arguments made in the affidavit is the claim that the "discharge was in violation of the Taft-Hartley Law" and that certain other acts were done as "a planned method of attempting to evade the Taft-Hartley Act".

The record as it now stands, viewed most favorably to plaintiff, lends little support to the basic charge that the defendants are guilty of misconduct. However, there may be enough evidence to raise an issue of fact and prevent the granting of defendants' motion for summary judgment.

It is unnecessary to decide this issue since a decision of the United States Supreme Court makes it clear that this Court has no jurisdiction. *San Diego Building Trades Council, Millmen's Union, Local* 2020, *etc. v. Garmon*, 1959, 359 *U. S.* 236, 79 *S. Ct.* 773, 3 *L. Ed.* 2d 775.

In the *San Diego* case an employer brought an action in the California Superior Court against the defendant unions. Plaintiff sought an injunction to restrain picketing and damages. The trial court's decision in favor of the employer was affirmed by the California Supreme Court, 1955, 45 *Cal.* 2d 657, 291 *P.* 2d 1. On *certiorari*, the United States Supreme Court reversed the judgment insofar as it granted an injunction. 1957, 353 *U. S.* 26, 77 *S. Ct.* 607, 1 *L. Ed.* 2d 618. On remand, the California Supreme Court entered a judgment awarding damages. 1958, 49 *Cal.* 2d 595, 320 *P.* 2d 473.

The United States Supreme Court again granted *certiorari* and held that the California court had no jurisdiction to award

an employer damages for injuries caused by picketing, even if such picketing constituted a tort under state law, since the matter was one which was "arguably within compass of * * * the National Labor Relations Act [29 *U. S. C. A.* § 151 *et seq.*]." [359 *U. S.* 236, 79 *S. Ct.* 775] This ruling was made in spite of the fact that the N. L. R. B. had already declined to exercise its jurisdiction in that particular dispute.

Mr. Justice Frankfurter, speaking for the majority of the Court, stated 359 *U. S.* at page 244, 79 *S. Ct.* at page 779:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the Taft-Hartly Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

"At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the board. (Citations ommitted)

"The case before us is such a case. The adjudication in California has throughout been based on the assumption that the

behavior of the petitioning unions constituted an unfair labor practice. This conclusion was derived by the California courts from the facts as well as from their view of the Act. It is not for us to decide whether the National Labor Relations Board would have, or should have, decided these questions in the same manner. When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

Four Justices speaking through Mr. Justice Harlan concurred on the narrow ground that the activities complained of may fairly be considered protected under the Taft-Hartley Act and that state action was thus precluded until the N. L. R. B. has made a contrary determination. The concurring justices went on, however, to vigorously dissent from the much broader views of the majority on what constituted preemption by the federal government of authority to act in labor disputes. The forceful concurring opinion clearly shows the Justices to have been aware that the case will find broad application and "will stand as a landmark in the future 'pre-emption' cases in the labor field".

Under the view of either the majority or that of the concurring minority, however, jurisdiction over the subject matter of this case has clearly been preempted for the N. L. R. B. by the Taft-Hartley Act.

There can be no question in this case that the complaint states a cause of action which, if proven, would constitute an unfair labor practice under Section 8(b) of the Labor Management Relations Act of 1947. 29 *U. S. C. A.* § 158(b). This is true whether the complaint be regarded as stating a cause of action under tort law or under contract law or both. The record shows that the N. L. R. B. actually assumed jurisdiction over the subject matter of the dispute and later dismissed—not for lack of jurisdiction—but on account of insufficient evidence.

In the *San Diego* case the state court was required to "defer to the exclusive competence" to the N. L. R. B. even though that Board had refused to act. In this case the N. L. R. B. has already acted. The San Diego principal is controlling.

This Court is clearly without jurisdiction to proceed further in the matter. The memorandum opinion, decided before the *San Diego* case, was in error.

Since the error is one going to the jurisdiction of this Court over the subject matter of the controversy, it may be corrected at any stage of the proceeding.

An order dismissing the action for lack of jurisdiction will be entered.